**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GULF COAST MARITIME SUPPLY, INC.**<br>**5922 Harvey Wilson Drive**<br>**Houston, TX 77020-8121**<br><br>               **Plaintiff,**<br><br>    **v.**<br><br>**UNITED STATES OF AMERICA**<br>**c/o United States Attorney**<br>**Judiciary Building**<br>**555 Fourth Street, N.W.**<br>**Washington, DC 20530**<br><br>**AND**<br><br>**ALCOHOL AND TOBACCO TAX**<br>**AND TRADE BUREAU**<br>**1310 G Street, N.W.**<br>**Washington, DC 20005**<br><br>**AND**<br><br>**JOHN J. MANFREDA, in his official capacity as**<br>**ADMINISTRATOR**<br>**ALCOHOL AND TOBACCO TAX**<br>**AND TRADE BUREAU**<br>**1310 G Street, N.W.**<br>**Washington, DC 20005**<br><br>               **Defendants.** | Civil Action No. <u>**16-1461**</u><br><br><br>Civil Action<br><br>**COMPLAINT**<br>**FOR DECLARATORY AND**<br>**INJUNCTIVE RELIEF** |

**COMPLAINT**

**FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Gulf Coast Maritime Supply, Inc. ( "Gulf Coast") by way of this Complaint

against the United States of America ("United States"), the Alcohol and Tobacco Tax and Trade

Bureau ("TTB"), and John J. Manfreda in his official capacity as Administrator of the Alcohol and Tobacco Tax and Trade Bureau ("Administrator") (collectively "Defendants"), hereby states and alleges as follows:

## NATURE OF THE ACTION

1.      This action under the provisions of 5 U.S.C. §§ 702 and 706 seeks declaratory and injunctive relief to hold unlawful and set aside the unlawful, arbitrary and capricious decision of TTB, dated April 14, 2016, terminating Gulf Coast's Export Warehouse Proprietor's Permit for tobacco Export Warehouse EW-149-TEX in Houston, Texas. This action is also brought under 5 U.S.C. §§ 553(b), 558, 702 and 706 seeking declaratory and injunctive relief against (1) TTB's promulgation of a substantive rule of general applicability without advance notice and comment and (2) TTB's revocation of Gulf Coast's Tobacco Export Warehouse Proprietor's Permit, its Alcohol Importer's Basic Permit, and its Alcohol Wholesaler's Basic Permit, without advance notice and an opportunity to achieve compliance with legal and regulatory requirements.

## PARTIES

2.      Plaintiff Gulf Coast is a Texas corporation with its principal place of business located at 5922 Harvey Wilson Drive, Houston, Texas 77020-8121.

3.      Defendant United States has offices in Washington, DC; Defendant TTB is headquartered at 1310 G Street, N.W., Washington, DC 20005; and Defendant Administrator has his office at 1310 G Street, N.W., Washington, DC 20005.

## JURISDICTION AND VENUE

4.      Jurisdiction over the parties and subject matter of this action is proper in this Court pursuant to 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. § 1346 (civil action against the United States founded on an Act of Congress or regulation of an executive agency) and 28 U.S.C. § 1361 (action to compel an offer of an agency of the United States to perform his duty).

5.      The decision challenged in this action is final agency action of TTB.

6.      There is an actionable and justiciable controversy between Gulf Coast and Defendants requiring resolution by this Court.

7.      This Court has personal jurisdiction over Defendants United States, TTB and Administrator.

8.      Venue in this district is proper pursuant to 28 U.S.C. § 139l(b) and (e) and 5 U.S.C. § 703.

9.      This Court may grant declaratory and injunctive relief pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 553(b), 558, 702 and 706 and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

10.     This action is not brought for the purpose of restraining the assessment or collection of a tax, within the meaning of 28 U.S.C. § 7421(a).

11.     This action seeks decisions only on whether Gulf Coast's TTB Tobacco Export Warehouse Proprietor's Permit, Alcohol Importer's Basic Permit, and Alcohol Wholesaler's Basic Permit, automatically terminated in September 2013 and whether TTB provided Gulf Coast with statutory due process before TTB's *de facto* and *de jure* revocation of Gulf Coast's Tobacco Export Warehouse Proprietor's Permit and its two alcohol basic permits by its letter of April 14, 2016.

## STANDING

12.     Plaintiff Gulf Coast has standing to bring this action under 5 U.S.C. § 558 and 26 U.S.C. § 5713(b) as a licensee of TTB denied the notice and opportunity to achieve compliance prescribed therein and under 5 U.S.C. § 702 as a person adversely aggrieved by agency action.

## STATEMENT OF FACTS

13.     Effective January 24, 2003, the Bureau of Alcohol Tobacco and Firearms ("ATF") was reorganized through the transfer of ATF to the Department of Justice while ATF's revenue functions remained with the Treasury Department in the newly created Alcohol and Tobacco Tax and Trade Bureau.  Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 4 and 1111; 116 Stat. 2274 (Nov. 25, 2002).

14.     Gulf Coast is a Subchapter S corporation incorporated in Texas and headquartered in Houston, Texas.

15.     Gulf Coast operates a TTB bonded tobacco export warehouse and a Customs bonded warehouse at its location at 5922 Harvey Wilson Drive, Houston, Texas 77020-8121.

16.     Prior to April 14, 2016, Gulf Coast for over 42 years operated TTB tobacco export warehouse EW-149-TEX, removing untaxpaid tobacco products therefrom for delivery, under supervision by U.S. Customs and Border Protection, to vessels eligible to receive such products as supplies for consumption on the high seas beyond the jurisdiction of U.S. tobacco excise laws in accordance with the terms of 19 U.S.C. §§ 1309 and 1371, 26 U.S.C. § 5704(b), 19 C.F.R. §§ 10.59-10.65, and 27 C.F.R. §§ 44.61(a) and 44.62, which are the best evidence of their contents.

17.     Prior to April 14, 2016, for 42 years, Gulf Coast made tax exempt sales of imported alcohol products from its Customs bonded warehouse under two TTB-issued permits, an Alcohol Importer's Basic Permit, TX-I-344, and an Alcohol Wholesaler's Basic Permit, TX-P-3655.

18.     Texas is a community property state in which property acquired during marriage is presumed to be jointly owned by both spouses.  Texas community property is subject to joint management.  Texas Family Code §§ 3.002 and 3.102.

19.     Salem L. Geller married Barbara R. Druss on January 11, 1970.  Upon their marriage, Salem L. Geller and Barbara Druss Geller resided in Texas.

20.     Gulf Coast has issued 1,000 shares of stock.

21.     Prior to August 2, 2013, 450 shares of Gulf Coast stock were issued to Salem L. Geller and 450 shares of Gulf Coast stock were issued to his spouse, Barbara Druss Geller, and the 900 shares were held by them as community property.  The remaining 100 shares of Gulf Coast stock were issued to Jay Howard Geller, the son of Salem L. Geller and Barbara Druss Geller.

22.     Gulf Coast notified TTB of the ownership of its shares by Salem L. Geller, Barbara Druss Geller, and Jay Howard Geller by letter of November 15, 1994.  Plaintiff's Exhibit ("Pl. Ex.") 1.

23.     Salem L. Geller died on August 2, 2013.  Pl. Ex. 2.

24.     Salem L. Geller and Barbara Druss Geller were married at the time of Salem L. Geller's death in Texas on August 2, 2013.  Barbara Druss Geller continues to reside in Texas.

25.     As of August 2, 2013, Salem L. Geller's 450 shares of Gulf Coast stock were community property subject to probate under his Will.

26.     Barbara Druss Geller qualified as Independent Executrix of Salem L. Geller's estate on September 4, 2013 and she continues to serve in that capacity.  Pl. Exs. 3 and 4.

27.     By Partition Agreement dated January 19, 2015, Barbara Druss Geller, acting on her own behalf and as Independent Executrix of Salem L. Geller's estate, partitioned and divided assets held one-half by Salem L. Geller's estate, including Salem L. Geller's 450 shares of Gulf Coast, so that thereafter Barbara Druss Geller owned 100 percent of the interest in the 900 shares of Gulf Coast stock previously held by Salem L. Geller and Barbara Druss Geller as community property.  Pl. Ex. 4.

28.     Gulf Coast has not cancelled or reissued Salem L. Geller's 450 shares of stock.

29.     No living person other than Barbara Druss Geller ever possessed any right or control over Salem L. Geller's 450 shares of Gulf Coast stock.

30.     As the spouse of Salem L. Geller, under Texas community property law, Barbara Druss Geller had equals right of ownership and management control over Salem L. Geller's stock while he was alive.   Following the death of Salem L. Geller, her ownership and management interest in Gulf Coast stock did not change.

31.     Congress enacted 26 U.S.C. § 1361(c)(1), which is the best evidence of its contents, and which provides that, for purposes of Title 26, United States Code, family members of the shareholder of a Subchapter S corporation and their estates shall be treated as one shareholder.

32.     Excise taxes on tobacco products are provided for in Chapter 52 of Title 26 of the United States Code.

33.     Excise taxes on alcohol products are provided for in Chapter 51 of Title 26 of the United States Code.

34.     Gulf Coast is a Subchapter S corporation for federal tax purposes and has been a Subchapter S corporation since its tax year beginning September 1, 1987.

35.     ATF issued to Gulf Coast a Tobacco Export Warehouse Proprietor's Permit for EW-149-TEX in Houston, Texas, effective November 9, 1973.  Pl. Ex. 5.

36.     Gulf Coast has timely paid to TTB the $1,000 Special Occupational Tax on export warehouse proprietors for the period July 1, 2015 to June 30, 2016 and for the period July 1, 2016 to June 30, 2017.  Pl. Ex. 6.

37.     Gulf Coast has submitted to TTB, and TTB's Director National Revenue Center has accepted and approved, an export warehouse proprietor's Tobacco Surety Bond #603610017 in the amount of $200,000, the maximum estimated amount of tax liability determined by TTB that may constitute a charge against the bond covering export warehouse EW-149-TEX.  Pl. Ex. 7.

38.     ATF issued to Gulf Coast an Alcohol Importer's Basic Permit TX-I-344 effective November 8, 1973.  Pl. Ex. 8.

39.     On information and belief, ATF issued to Gulf Coast an Alcohol Wholesaler's Basic Permit TX-P-3655 effective in November 1973.

40.     In the 42 years since ATF issued Gulf Coast a proprietor's permit for tobacco export warehouse EW-149-TEX, an Alcohol Importer's Basic Permit, TX-I-344, and an Alcohol Wholesaler's Basic Permit, TX-P-3655, Gulf Coast has operated under such permits.

41.     Under Texas law, based on Salem L. Geller's and Barbara Druss Geller's ownership of Gulf Coast stock and based on the status of Salem L. Geller and Barbara Druss Geller as a married couple, Salem L. Geller and Barbara Druss Geller, possessed joint rights of ownership, management and control of Gulf Coast when Gulf Coast received its export warehouse proprietor's permit in 1973.  *See* Texas Family Code §§ 3.102, which is the best evidence of its contents.

42.     Salem L. Geller was a director and President of Gulf Coast until his death on August 2, 2013.

43.     Barbara Druss Geller became a director and officer of Gulf Coast in 1973 and continues to serve as a director and officer of Gulf Coast.

44.     Jay Howard Geller became a director and officer of Gulf Coast in 1994 and continues to serve as a director and officer of Gulf Coast.

45.     TTB approved the November 14, 1994 notification submitted by Gulf Coast to report the ownership, officers, directors, or stockholders of the corporation in connection with its TTB permits including its permit for EW-149-TEX.  Pl. Ex. 1.

46.     By letter of April 14, 2016, from the Director, National Revenue Center, TTB asserted that, since September 2013, Gulf Coast has been operating without valid export

warehouse [EW-TX-149 (sic)], alcohol importer [TX-I-344] and alcohol wholesaler [TX-P-3655] permits, such permits having allegedly terminated automatically pursuant to 27 C.F.R. §§ 1.44 and 44.107, 26 U.S.C. § 5713, and 27 U.S.C. § 204(g), for "unreported changes in control of Gulf Coast" and, more specifically, for (a) failure to apply for new permits within 30 days of the "lease, sale, or other voluntary transfer" of a basic permit and (b) failure to notify TTB and apply for new permits within 30 days of an unstated event constituting the "issuance, transfer, or sale of stock of a corporation acting as an export warehouse proprietor, [that] results in a change in the identity of the principal stockholders exercising actual or legal control over the operations of the corporation."  Pl. Ex. 9.

47.     Inconsistent with the TTB's claims of automatic terminations of Gulf Coast's tobacco export warehouse proprietor's permit in September 2013, TTB has issued an Inquiry Letter dated May 31, 2016 seeking voluntary tender of tobacco excise taxes Gulf Coast's tobacco export warehouse removals during the period October 1, 2013 through March 31, 2016.  Pl. Ex. 10.

48.     TTB Regulation 27 C.F.R. § 1.44, which is the best evidence of its contents, provides:

> No basic permit shall be leased, sold, or otherwise voluntarily transferred, and, in the event of such lease, sale, or other voluntary transfer, such basic permit shall automatically terminate thereupon. If any basic permit is transferred by operation

of law or if actual or legal control of the permittee is acquired, directly or indirectly whether by stock ownership or in any other manner, by any person, then such permit shall be automatically terminated at the expiration of 30 days thereafter: Provided, That if within such 30-day period application for a new basic permit is made by the transferee or permittee, respectively, then the outstanding basic permit shall continue in effect until such time as the application is finally acted upon.

49.   TTB Regulation 27 C.F.R. § 44.107, which is the best evidence of its contents,

provides:

Where the issuance, sale, or transfer of the stock of a corporation, operating as an export warehouse proprietor, results in a change in the identity of the principal stockholders exercising actual or legal control of the operations of the corporation, the corporate proprietor shall, within 30 days after the change occurs, make application for a new permit; otherwise, the present permit shall be automatically terminated at the expiration of such 30-day period, and the proprietor shall dispose of all cigars, cigarettes, and cigarette papers and tubes on hand, in accordance with this part, make a closing inventory and closing report, in accordance with the provisions of §§ 44.146 and 44.151, respectively, and surrender his permit with such inventory and report.  If the application for a new permit is timely made, the present permit shall continue in effect pending final action with respect to such application.

50.   Gulf Coast has not issued, sold, or transferred stock since 1994.

51.   ATF Industry Circular 73-7, which is the best evidence of its contents, requires

reporting of "a change in the identity of the principal stockholders exercising actual or legal

control of the operations of the corporation."

52.   Barbara Druss Geller, is a principal stockholder of Gulf Coast who, as an owner,

director, and officer of Gulf Coast, has exercised and continues to exercise the same degree of

actual and legal control over the operations of the corporation that she did before and after the death of Salem L. Geller.

53.     Until his death on August 2, 2013, Salem L. Geller was a principal stockholder of Gulf Coast who, as an owner, director, and officer, exercised actual and legal control over the operations of the corporation.

54.     When Barbara Druss Geller was appointed Independent Executrix of the estate of Salem L. Geller in September 2013, no new individual became a stockholder of Gulf Coast so that the identity of the principal stockholders of Gulf Coast exercising actual or legal control over the operations of the corporation did not change.

55.     When Barbara Druss Geller and Barbara Druss Geller the Independent Executrix of the estate of Salem L. Geller reached a partition agreement, effective January 1, 2015, under which Barbara Druss Geller obtained the ownership of 100 percent of Gulf Coast stock which she previously enjoyed before the death of Salem L. Geller under Texas community property law, no new individual became a stockholder of Gulf Coast so that the identity of the principal stockholders of Gulf Coast exercising actual or legal control over the operations of the corporation did not change.  Pl. Ex. 4.

56.     No individual with an identity unknown to TTB became a principal stockholder of Gulf Coast exercising actual or legal control over the operations of the corporation within the meaning of 27 C.F.R. § 44.107 as a result of any of the following: the death of Salem L. Geller, the qualification of Barbara Druss Geller as Independent Executrix of the estate of Salem L. Geller, or the Partition Agreement.  *Id.*

57.     In 26 U.S.C. § 5713(b), which is the best evidence of its contents, Congress has prescribed that a tobacco export warehouse proprietor permit holder must receive an Order from the Secretary of the Treasury or his delegate giving notice of facts charged and an opportunity for a hearing before suspension or revocation of a permit.  *See* definition of "Secretary" for purposes of Title 26 at 26 U.S.C. § 7701(a)(11)(B), which is the best evidence of its contents.

58.     In 27 U.S.C. § 204(e), which is the best evidence of its contents, Congress has prescribed that an alcohol basic permit holder must receive an Order from the Secretary of the Treasury or his delegate giving notice of facts charged and an opportunity for a hearing before suspension or revocation of a permit.

59.     A TTB permit is required to engage in the business of tobacco export warehouse proprietor.  *See* 26 U.S.C. § 5713(a) and 27 C.F.R. § 44.82, which are the best evidence of their contents.

14

60.     A TTB permit is required to engage in the business of importing alcohol products. *See* 27 U.S.C. § 203(a) and 27 C.F.R. § 1.20, which are the best evidence of their contents.

61.     A TTB permit is required to engage in the business of selling alcohol products at wholesale.  *See* 27 U.S.C. § 203(c) and 27 C.F.R. § 1.22, which are the best evidence of their contents.

62.     Pursuant to 26 U.S.C. 5722, which is the best evidence of its contents, only tobacco manufacturers, importers, and export warehouse permit holders are required to file reports with TTB.

63.     TTB has treated Gulf Coast as a tobacco export warehouse proprietor permit holder continuously for the past 42 years.  TTB has accepted Gulf Coast's monthly filing of Form 5200.14; it has accepted Gulf Coast's notifications of its owners, directors, and officers; and it has accepted Gulf Coast's Tobacco Bond securing payment of any liability from its export warehouse operations.

64.     Notwithstanding TTB's claims that Gulf Coast's tobacco export warehouse proprietor's permit automatically terminated in 2013, TTB's National Revenue Center ("NRC") continued to treat Gulf Coast as a tobacco export warehouse proprietor permit holder until May 31, 2016 when it sent Gulf Coast an Inquiry Letter (502030400:ALG) inviting Gulf Coast

to submit information why Gulf Coast need not submit taxable removal reports from EW-149-TEX and is not liable for payment of over $7.8 million in excise taxes for the period October 1, 2013 through March 31, 2016.

65.     Gulf Coast has exhausted its administrative remedies. TTB has failed to make available to Gulf Coast administrative remedies prescribed in its regulations.

66.     Gulf Coast received no notice in accordance with 26 U.S.C. § 5713(b) stating that TTB intended to revoke Gulf Coast's tobacco export warehouse proprietor's permit, EW-149-TEX, the facts charged, or inviting Gulf Coast to show cause why such permit should not be revoked.

67.     Gulf Coast received no notice in accordance with 27 U.S.C. § 204(e) stating that TTB intended to revoke Gulf Coast's alcohol importer and wholesaler basic permits, TX-I-344 and TX-P-3655, respectively.

68.     TTB notified Gulf Coast by letter dated April 14, 2016 only that its tobacco export warehouse proprietor's permit EW-TX-149 [sic] and its alcohol importer and wholesaler basic permits TX-I-344 and TX-P-3655 had already terminated in September 2013.  Pl. Ex. 9.

69.     Gulf Coast received no notice in accordance with 5 U.S.C. § 558(c) that willfulness or public health, interest, or safety, required revocation of Gulf Coast's export

warehouse proprietor's permit without advance notice in writing of the facts or conduct warranting revocation, without a hearing, and without an opportunity to demonstrate or achieve compliance with all lawful requirements.

70.     Gulf Coast received no notices or inquiries of any kind from TTB prior to TTB's *de facto* and *de jure* revocation Gulf Coast's Alcohol Importer's Basic Permit TX-I-344.

71.     Gulf Coast received no notices or inquiries of any kind from TTB prior to TTB's *de facto* and *de jure* revocation Gulf Coast's Alcohol Wholesaler's Basic Permit TX-P-3655.

72.     TTB's decision revoking Gulf Coast's export warehouse proprietor's permit and its alcohol importer's and wholesaler's basic permits has caused Gulf Coast to suffer irreparable harm through loss of current sales, damage to its reputation as a reliable supplier to its customers of untaxpaid tobacco products, damage to its reputation as a reliable business partner with its suppliers of untaxpaid tobacco products, and a loss of future business.  Gulf Coast's sales subject to TTB permits were in excess of $1 million per month.  *See* Declaration of Jay Goldstein, Gulf Coast General Manager. Pl. Ex. 11.

73.     Without a valid Export Warehouse Proprietor's Permit, Alcohol Import's Basic Permit, and Alcohol Wholesaler's Basic Permit, Gulf Coast is unable to accept orders and is unable to remove untaxpaid domestic tobacco products from export warehouse EW-149-TEX

and is unable to remove untaxpaid alcohol products from its customs bonded warehouse for delivery to its established customers. As the result, the company has lost, and will continue to lose, substantial sales. *Id.*

74.     Based on historical sales data, TTB's revocation of Gulf Coast's Tobacco Export Warehouse Proprietor's Permit, Alcohol Importer's Basic Permit, and Alcohol Wholesaler's Basic Permit, has caused Gulf Coast to lose sales to established customers of untaxpaid tobacco products previously supplied from EW-149-TEX and its customs bonded warehouse. *Id.* Gulf Coast has lost from $1,250,000 to $1,750,000 in sales to eligible vessels to date in 2016 and which lost sales will continue while its permits are deemed terminated by TTB. *Id.*

75.     Without valid TTB permits, Gulf Coast is unable to receive replenishment of its export warehouse inventory of untaxpaid domestic tobacco products and receive replenishment of its customs bonded warehouse inventory from its suppliers to deliver orders to vessels eligible to receive such products. *Id.*

76.     Without a valid TTB permits, Gulf Coast will be unable to supply a full range of products desired by its established customers and will lose their future business to competitors who are able to supply such a full range of products. *Id.*

77.     After Gulf Coast's established customers find replacement sources of supply, Gulf Coast may never recover even a portion of their business due the damage to its reputation. *Id*.

**COUNT 1**
**Agency Action Taken Without Observance of Procedure**
**Required by Law – 26 U.S.C. § 5713(b), 27 U.S.C. § 204(e),**
**5 U.S.C. § 558(c), 5 U.S.C. § 706(2)(D)**

78.     Paragraphs 1 through 77 of this Complaint are incorporated by reference, and alleged, as though fully restated herein.

79.     At all times relevant to this action, plaintiff operated a TTB Export Warehouse, under authority of a warehouse proprietor's permit issued by defendant.

80.     At all times relevant to this action, plaintiff operated a U.S. Customs and Border Protection bonded warehouse receiving and removing untaxpaid alcohol products under authority of alcohol importer and wholesaler basic permits issued by defendant.

81.     In connection with the operation of its TTB Export Warehouse, plaintiff received transfers of tobacco products on which Federal Excise Taxes had not been assessed, made sales and deliveries of such products to export customers in accordance with the procedures specified in relevant statutes and regulations administered by TTB and United States Customs and Border Protection, maintained a warehouse bond as required by TTB, created and maintained warehouse

inventory records in a form required by TTB regulations and filed all reports and other documents required by TTB.   During all relevant periods, plaintiff made its TTB Export Warehouse available for inspection by TTB officials.

82.   TTB's April 14, 2016 action claiming that plaintiff's tobacco export warehouse proprietor's permit and its alcohol importer's and wholesaler's basic permits were revoked by operation of law is final agency action and constitutes a *de facto* and *de jure* revocation of plaintiff's tobacco export warehouse proprietor's permit and its alcohol importer's and wholesaler's basic permits.

83.   TTB's present demand that plaintiff make application for a TTB Export Warehouse proprietor's permit no later than September, 2013 constitutes a *de facto* and *de jure* revocation of plaintiff's tobacco export warehouse proprietor's permit and its alcohol importer's and wholesaler's basic permits.

84.   Plaintiff's tobacco export warehouse proprietor's permit and its alcohol importer's and wholesaler's basic permits are "licenses" for purposes of the Administrative Procedure Act, and particularly 5 U.S.C. § 558.  5 U.S.C. § 551(8).

85.   The Administrative Procedure Act, 5 U.S.C. § 558(c), which is the best evidence of its contents, provides:

(c). When application for a license is required by law, the agency, with due regard for the rights and privileges of the interested parties or adversely affected persons, and within a reasonable time, shall set and complete proceedings required to be conducted in accordance with sections 556 and 557 of this Act and shall make its decision. **Except in cases of willfulness or those in which the public health, interest or safety requires otherwise, the withdrawal, suspension, revocation or annulment of a license is lawful only if, before institution of agency proceedings therefor, the licensee has been given –**

> **(1) Notice by the agency in writing of the facts or conduct which may warrant the action; and**
>
> **(2) Opportunity to demonstrate or achieve compliance with all lawful requirements.**
>
> Where the licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency.

Emphasis added.

86.     Defendant, prior to the commencement of proceedings to revoke, withdraw, suspend or annul plaintiff's TTB Export Warehouse Proprietor's Permit and its alcohol importer's and wholesaler's basic permits , did not provide plaintiff with notice in writing of the facts which may warrant the action.

87.     Defendant, prior to the commencement of proceedings to revoke, withdraw, suspend or annul plaintiff's TTB Export Warehouse Proprietor's Permit and its alcohol importer's and wholesaler's basic permits, did not provide plaintiff with any opportunity to

demonstrate or achieve compliance with all lawful requirements, including  requirements, if any, in respect of which plaintiff may have been alleged to have been deficient.

88.     On information and belief, there are no circumstances relating to the public health, interest or safety which would relieve defendant of the obligation to provide plaintiff with the prior notice and opportunity to correct any defects pursuant to 5 U.S.C. § 558(c).

89.     The Administrative Procedure Act, 5 U.S.C. § 706(2)(D) requires a reviewing court to hold any lawful and set aside, agency action done "without observance of procedure required by law".

90.     To the extent defendant has revoked, suspended, withdrawn or annulled plaintiff's TTB Export Warehouse Proprietor's Permit and its alcohol importer's and wholesaler's permits without observance of the procedures required by 5 U.S.C. § 558(c), this court must set aside such action as without observance of procedure required by law, in accordance with 5 U.S.C. § 706(d)(2).

## COUNT II
### Agency Action Contrary to Law and
### Arbitrary and Capricious Agency Action Violates 5 U.S.C. § 706

91.     Paragraphs 1 through 90 of the Complaint are incorporated by reference, and alleged, as though fully restated herein.

92.     Gulf Coast's TTB Tobacco Export Warehouse Proprietor's Permit and its alcohol importer's and wholesaler's basic permits became effective in November 1973.  Pl. Exs. 5 and 8.

93.     For the past 42 years, Gulf Coast has submitted and TTB has accepted Gulf Coast's export warehouse withdrawal reports on *Taxable Articles Without Payment of Tax* Form 5200.14.

94.     For the past 42 years, Gulf Coast has submitted and TTB has accepted Gulf Coast's export warehouse proprietors bond.

95.     TTB's April 14, 2016 *de facto* and *de jure* decision that Gulf Coast's export warehouse proprietors permit and its alcohol importer's and wholesaler's basic permits were revoked by operation of law in September 2013 is final agency action which is arbitrary, capricious, an abuse of discretion, and contrary to law, and also constitutes agency action without observance of procedures required by law, and the Court should set it aside pursuant to 5 U.S.C. § 706.

96.     TTB's implied decision that the death of one member of a family who owns stock in an S corporation in a the community property state of Texas in which his surviving spouse, who is the Independent Executrix of his estate, retains the same ownership interest in the stock and in Gulf Coast as before and after his death, is a change in the identity of the principal

stockholders exercising actual or legal control over the operations of the corporation requiring notification to TTB, without which a TTB permit automatically terminates, is contrary to law, specifically 26 U.S.C. § 1361(c).

97.     TTB's decision that in the absence of a reissuance of stock of an S corporation, there is a change in the identity of the principal stockholders exercising actual or legal control over the operations of the corporation requiring notification to TTB, without which a TTB permit automatically terminates, is arbitrary and capricious in that it is inconsistent with TTB's continued treatment of Gulf Coast as a valid export warehouse proprietor permit holder responsible to file reports of removals.

## COUNT III
### Agency Action Taken Without Observance of Procedure
### Required by Law –5 U.S.C. § 553, 5 U.S.C. § 706(2)(D)

98.     Paragraphs 1 through 97 of this Complaint are incorporated by reference, and alleged, as though fully restated herein.

99.     TTB has published no notice that stock ownership for purposes of reporting a change in identity of the principal stockholders exercising actual or legal control over the operations of a corporation is to be determined without regard to 26 U.S.C. § 1361(c).

100.    TTB has published no notice that stock ownership for purposes of reporting a change in identity of the principal stockholders exercising actual or legal control over the

operations of a corporation is to be determined without regard to state law establishing community property ownership, management and control interests.

101.     TTB has published no notice that stock ownership for purposes of reporting a change in identity of the principal stockholders exercising actual or legal control over the operations of a corporation is to be determined under any special rules developed by TTB.

102.     TTB's determination that the death of a family member owner of stock in an S corporation constitutes a change in the identity of the principal stockholders exercising actual or legal control over the operation of the corporation, in circumstances where the owner and his spouse having a community property interest in the stock and their estates are treated as a single owner pursuant to 26 U.S.C. 1361(c) is an agency rule of general applicability promulgated without advance notice and opportunity to comment in violation of 5 U.S.C. § 553.

103.     Section 4(a) of the Administrative Procedure Act, 5 U.S.C. § 553(b), requires that all "legislative" agency rules be issued in accordance with notice and comment rulemaking procedures. The statute, which is the best evidence of its contents, provides:

> General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—
>
> (1) a statement of the time, place, and nature of public rule making proceedings;
>
> (2) reference to the legal authority under which  the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

104. The requirements of 5 U.S.C. § 553(b) apply to proceedings for the issuance of substantive rules with the force of law. *Chrysler Corp. v. Brown*, 441 U.S. 281, 313 (1979); *Batterton v. Marshall*, 648 F.2d 694, 700–02 (D.C. Cir. 1980). The term "rulemaking" embraces agency processes for formulating, amending or repealing such substantive rules. 5 U.S.C. § 551(5) (1988). Any attempt by an agency to engage in rulemaking without opportunity for public comment is condemned. *Nat'l Wildlife Fed'n v. Clark*, 577 F. Supp. 825, 828 (D.D.C. 1984).

105. Substantive or legislative-type rules requiring notice-and-comment rulemaking as specified in 5 U.S.C. § 553(b) are those that relate to and change the standards of conduct, and have force of law. *See, e.g.*, *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045 (D.C. Cir. 1987).

106.    TTB's determination that the death of a family member owner of stock in an S corporation when the owner and his spouse having a community property interest in the stock and their estates are treated as a single owner pursuant to 26 U.S.C. 1361(c) changes the identity of the principal stockholders exercising actual or legal control over the operations of the corporation requiring notification to TTB, without which a TTB permit automatically terminates, is a substantive rule  of general applicability which is legislative in nature and which changes standards of conduct.  Such requirements may only be imposed after TTB undertakes rulemaking as specified in 5 U.S.C. § 553(b).

107.    TTB at no time published advance notice of, or sought public comment concerning, the substantive requirements of general applicability to report a change in the identity of the principal stockholders exercising actual or legal control over the operations of the corporation when the owner and his spouse having a community property interest in the stock and their estates are treated as a single owner pursuant to 26 U.S.C. 1361(c).

108.    The reporting requirements set forth in TTB's letter of April 14, 2016 to Gulf Coast do not constitute "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice," and are not exempt from the notice and comment rulemaking requirements set forth in 5 U.S.C. § 553(b).

109.    TTB has not made or published any determination relating to the change reporting requirement that, for "good cause," the "notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest," pursuant to 5 U.S.C. § 553(b)(3)(B).

110.    Section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706(2), which is the best evidence of its contents, requires any reviewing court to hold unlawful, and set aside, any agency action which is "without observance of procedure required by law."

111.    To the extent that TTB's letter of April 14, 2016 to Gulf Coast purports to establish substantive, legislative rules applicable to the reporting obligations of permit holders, and to the extent said document was promulgated without "observance of procedure required by law," this Court is required to declare unlawful, and set aside, the requirements set forth in said document.

## PRAYER FOR RELIEF

**WHEREFORE,** Gulf Coast respectfully requests that this Court enter Judgment in its favor, and that this Court enter an Order as follows:

A.    Enjoining TTB from suspending or revoking Gulf Coast's export warehouse proprietor's permit for EW-149-TEX and/or Gulf Coast's alcohol importer's basic permit TX-I-344, and alcohol wholesaler's basic permit, TX-P-3655, without compliance with the

advance notice, hearing, and opportunity to achieve compliance requirements of 26 U.S.C. § 5713(b) and 5 U.S.C. § 558(c);

B.      Setting aside and declaring arbitrary, capricious and contrary to law TTB's decision requiring Gulf Coast to file applications for a new tobacco export warehouse proprietor's permit to replace EW-149-TEX and for a new alcohol importer's basic permit and alcohol wholesaler's basic permit to replace TX-I-344 and TX-P-3655, respectively, thereby *de facto* and *de jure* revoking Gulf Coast's existing such permits without the advance notice, hearing, and opportunity to achieve compliance under its existing permits as required by 26 U.S.C. § 5713(b) and 5 U.S.C. § 558(c);

C.      Holding TTB's decision requiring Gulf Coast to file applications for a new tobacco export warehouse proprietor's permit to replace EW-149-TEX and for a new alcohol importer's basic permit and alcohol wholesaler's basic permit to replace TX-I-344 and TX-P-3655, respectively, to have been issued "without observance of procedure required by law" and to set the same aside as violating the provisions of the Administrative Procedure Act, 5 U.S.C. § 553(b) and 5 U.S.C. § 706(2);

D.      Holding TTB's decision requiring Gulf Coast to file applications for a new tobacco export warehouse proprietor's permit to replace EW-149-TEX and for a new alcohol

importer's basic permit and alcohol wholesaler's basic permit to replace TX-I-344 and TX-P-3655, respectively, to have been issued *ultra vires* by TTB, in violation of the requirements of 5 U.S.C. § 553(b) and 5 U.S.C. § 706(2); and

      E.     Providing Plaintiff with such other and further relief as this Court may deem just.

Respectfully submitted,

/s/  Michael K. Tomenga

Michael K. Tomenga, Esq. (D.C. Bar No. 257006)
John M. Peterson, Esq. (N.Y. Bar No. NY0103)
Neville Peterson LLP
1400 16th Street, N.W., Suite 350
Washington, DC 20036-2227
(202) 776-1148
mtomenga@npwdc.com
Attorneys for Plaintiff

Dated:   July 15, 2016