UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GULF COAST MARITIME SUPPLY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-cv-1461 (TSC) |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

In this case brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 558, Plaintiff Gulf Coast Maritime Supply, Inc. ("Gulf Coast") moves for a preliminary injunction to halt the termination of its basic permits for importing and wholesaling alcohol, and its tobacco export warehouse proprietor permit. Defendants the United States of America, Alcohol and Tobacco Tax and Trade Bureau ("TTB") of the U.S. Department of the Treasury, and John Manfreda in his official capacity as Administrator of TTB move to dismiss the suit for lack of subject matter jurisdiction. Upon consideration of the parties' motions and the arguments presented by counsel at the hearing held on October 6, 2016, Defendants' motion to dismiss is GRANTED and Plaintiff's motion for a preliminary injunction is therefore DENIED.

**I.   BACKGROUND**

   **A.  Statutory Framework**

This case involves two types of permits: the basic permits for importing and wholesaling alcohol ("basic permits" or "alcohol permits") and the tobacco export warehouse proprietor permit ("tobacco permit"). These permits allow the permit holder to import, store, and sell tobacco or alcohol without paying taxes on those products.

1. Alcohol Permits

Federal law requires businesses importing or purchasing alcoholic beverages for resale to have a permit issued by the Secretary of the U.S. Treasury. 27 U.S.C. § 203. To obtain a permit, importers or wholesalers like Gulf Coast must submit an application to TTB. 27 U.S.C. § 204; 27 C.F.R. § 1.25. Once approved, the business may use the alcohol permit

> until suspended, revoked, or annulled as provided herein, or voluntarily surrendered; *except that* . . . if transferred by operation of law or if actual or legal control of the permittee is acquired, directly or indirectly, whether by stock ownership or in any other manner, by any person, then *such permit shall be automatically terminated* at the expiration of thirty days thereafter.

27 U.S.C. § 204(g) (emphasis added). Thus, when a permittee experiences a change in actual or legal control, its permit "automatically terminate[s]" under the statute. The permittee then has thirty days to submit a new application, and if it does so its prior permit remains valid until TTB reaches a decision on the application. *Id.* Alternatively, TTB may revoke a permit after "due notice and opportunity for [a] hearing," if the business "has willfully violated any of the conditions" of the permit, "has not engaged in the operations authorized by the permit for a period of more than two years," or if the permit "was procured through fraud, or misrepresentation, or concealment of [a] material fact." 27 U.S.C. § 204(e). After revocation or denial of a new application, the permittee has sixty days to appeal TTB's decision to a U.S. Court of Appeals, which has "exclusive jurisdiction." 27 U.S.C. § 204(h).

2. Tobacco Permit

Domestic sale of tobacco products is subject to an excise tax on the manufacturers or importers of such products. 26 U.S.C. § 5703(a)(1). An export warehouse, such as Gulf Coast, stores tobacco products for shipment to purchasers outside of internal revenue jurisdiction, and as such is not required to pay the federal taxes on the tobacco it stores. 26 U.S.C. § 5702(h), (i).

Export warehouse proprietors must operate with a permit issued by TTB. 26 U.S.C. §§ 5712, 5713. Without such a permit, they may become liable for the excise tax and penalties if they receive tobacco products that did not have the excise tax paid by the manufacturer. 26 U.S.C. §§ 5703(a)(2), 5704(b), 5761(c). Proprietors must apply for a permit before commencing business and "at such other time as the Secretary shall by regulation prescribe." 26 U.S.C. § 5712. The TTB regulation for tobacco permits states:

> Where the issuance, sale, or *transfer of the stock of a corporation*, operating as an export warehouse proprietor, *results in a change in the identity of the principal stockholders exercising actual or legal control of the operations of the corporation*, the corporate proprietor shall, within 30 days after the change occurs, make application for a new permit; otherwise, the *present permit shall be automatically terminated* at the expiration of such 30–day period . . . . If the application for a new permit is timely made, the present permit shall continue in effect pending final action with respect to such application.

27 C.F.R. § 44.107 (emphasis added). The statute separately provides that TTB can suspend or revoke permits, requiring a show cause hearing. 26 U.S.C. § 5713(b).

### B. Parties and This Litigation

Plaintiff Gulf Coast is a corporation in Houston, Texas, that acquires untaxed alcohol and tobacco products and sells them to commercial vessels for consumption while at sea. (Compl. ¶¶ 14, 16–17). Plaintiff has held alcohol and tobacco permits since 1973. (*Id.* ¶ 16, 17; Compl. Exs. 5, 8). Prior to 1994, Gulf Coast's shares were divided in half and owned by Salem Geller and Barbara Geller, who were married. (Compl. Ex. 1). In November 1994, Gulf Coast's stock allocation changed, such that Salem and Barbara Geller each owned forty-five percent of the shares and their son Jay Geller owned ten percent. (*Id.*). This was reported to TTB that same month. (*Id.*). This ownership allocation remained in place until August 2013, when Salem Geller died. Prior to his death, Salem was the "primary owner and operator" of Gulf Coast. (Compl. Ex. 2). Barbara Geller then inherited Salem's shares, leaving her with ninety percent of

the shares and majority control of Gulf Coast. (Compl. ¶¶ 23–27). After his death in 2013 through 2016, Gulf Coast's manager Jay Goldstein continued to use Salem Geller's signature stamp to file reports with TTB. (Wachholder Decl. ¶ 8; Gov't Ex. 101).

On April 14, 2016, TTB informed Gulf Coast that because of the change in stock allocation in August 2013, TTB determined that Plaintiff's permits had terminated automatically by operation of law in 2013, and continued operation would be taxable and potentially subject to civil or criminal penalties. (Compl. Ex. 9). On May 31, 2016, TTB sent Gulf Coast another letter, stating:

> A recent TTB investigation conducted at your premises disclosed that during October 1, 2013 through March 31, 2016, Gulf Coast Maritime Supply received 141,267,600 cigarette sticks without payment of tax while operating without a valid warehouse permit. Based on our investigation, we have determined that you are liable for tax, plus penalties and interest, in the total amount of $7,836,787.40. This inquiry is being sent to give you the opportunity to voluntarily pay the amount we have determined to be due, or to provide additional information for us to consider. . . . If we do not hear from you within 45 days, we will process the returns we have prepared for you and assess the tax under the authority of 26 U.S.C. § 6020(b) of the Internal Revenue Code. You will then be billed for the amount of the tax liability plus any penalties and interest due.

(Compl. Ex. 10 at 2).

Plaintiff's permits indicate that changes in ownership or control must be immediately reported to TTB. Plaintiff's alcohol permits state, in capital letters, that "This permit will automatically terminate thirty days after any change in proprietorship or control of the business, unless an application for a new basic permit is made . . . ." (Compl. Ex. 8). This language rephrases the authorizing statute, described above. Plaintiff's tobacco permit provides that the permit holder must comply with applicable provisions of 26 U.S.C. chapter 52, and that failure to do so may result in the permit being "suspended, revoked, automatically terminated, or voluntarily surrendered as provided by law and regulations. . . . Any change in name, address,

4

ownership, or control must be immediately reported to the [TTB]." (Compl. Ex. 5).

Gulf Coast continues to operate, has not paid these excise taxes and penalties, and has not applied for a new alcohol permit or tobacco permit. Gulf Coast filed this APA action alleging that TTB failed to provide sufficient notice and procedures before terminating the permits, and seeks a preliminary injunction to preserve the status quo, which in its perspective means continued operation under its now-terminated permits.

## II.   LEGAL STANDARD

### A. Motion to Dismiss for Lack of Jurisdiction

Federal courts are courts of limited jurisdiction. *See Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). The law presumes that "a cause lies outside [the court's] limited jurisdiction" unless the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When a defendant files a motion to dismiss a complaint for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).

In evaluating a motion to dismiss under Federal Rule 12(b)(1), the court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" *Am. Nat'l Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Nevertheless, "'the court need not . . . accept plaintiff's legal conclusions.'" *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).

**III.   ANALYSIS**

    **A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Defendants move to dismiss on the basis that the court lacks subject matter jurisdiction for all of Plaintiff's claims, arguing that the Anti-Injunction Act bars the tobacco permit claim and the statute grants exclusive jurisdiction to the Court of Appeals for the alcohol permits claim.

    1.   <u>Plaintiff's Tobacco Permit and the Anti-Injunction Act</u>

The Anti-Injunction Act ("AIA") states that "[n]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). The AIA therefore "creates a narrow exception to the general administrative law principle that pre-enforcement review of agency regulations is available in federal court." *Florida Bankers Ass'n v. Dep't of Treasury*, 799 F.3d 1065, 1066 (D.C. Cir. 2015). Plaintiffs seeking to challenge the assessment of a tax must instead "raise such challenges in refund suits after the tax has been paid, or in deficiency proceedings." *Id.*

As described above, the Internal Revenue Code imposes a tax on manufacturers of tobacco products. 26 U.S.C. § 5701. This tax liability is transferred to export warehouses like Gulf Coast when they take possession of untaxed tobacco, unless they possess a permit from TTB. 26 U.S.C. §§ 5703(a)(2), 5712. Defendants argue that the AIA therefore bars Plaintiff's tobacco permit claim because an order from this court restoring Plaintiff's permit would prevent Defendants from collecting the excise taxes and tax penalties that TTB has begun the process of assessing under 26 U.S.C. § 5701.

Plaintiff asserts a number of reasons why the Anti-Injunction Act does not bar the present suit, primarily arguing:  (1) that it does not seek to enjoin an assessment of excise taxes, but rather seeks a finding that its permits were revoked without adherence to required procedures,

and (2) that a judicially-created exception to the AIA applies because Plaintiff has no adequate remedy if the AIA prohibits its suit.

The court is unpersuaded by Plaintiff's first argument. No matter how Plaintiff articulates its claim—whether it is a direct challenge to its tax liability or a request to have its permits restored—"the effect of an injunction here is to interfere with the assessment or collection of a tax." *Int'l Lotto Fund v. Va. State Lottery Dep't*, 20 F.3d 589, 591 (4th Cir. 1994) (AIA applies "[r]egardless of how claim is labelled"). An APA challenge that has the effect of restraining assessment or collection of an excise tax is still barred by the AIA, regardless of the specific remedy sought. *See RYO Machine, LLC v. U.S. Dep't of Treasury*, 696 F.3d 467, 471 (6th Cir. 2012) (AIA stripped the district court of subject matter jurisdiction in an APA action brought to challenge TTB's rulemaking). Indeed, the "AIA has been interpreted broadly to encompass almost all premature interference with the assessment or collection of any federal tax." *Id.* (citing *Bob Jones Uni. v. Simon*, 416 U.S. 725, 736–37 (1974)).

To support its position that an APA challenge may proceed despite the Anti-Injunction Act, Plaintiff references numerous cases involving duty-free warehouses and stores. However, Plaintiff's counsel conceded at oral argument that these cases fail to even analyze the AIA. Instead, Plaintiff pointed to two cases it indicated were directly on point: *Aqua Bar & Lounge, Inc. v. IRS*, 539 F.2d 935 (3d Cir. 1976), which was not included in Plaintiff's briefs, and *Ammex, Inc. v. United States*, 419 F.3d 1342 (Fed Cir. 2005). Despite Plaintiff's assertions to the contrary at oral argument, these cases do not support its position.[1] The court in *Aqua Bar*

---

[1] The court notes with some concern that when directly asked at oral argument if the *Ammex* case discussed the Anti-Injunction Act, Plaintiff's counsel indicated that the district court "held" the claim to be barred by the AIA, and the appeals court "held" that it was not. Plaintiff's counsel misrepresented these cases. Neither the cited case nor the case below consider the AIA.

held that the AIA did not bar a suit by a taxpayer to quiet title to property seized by the IRS after nonpayment of taxes owed if the taxpayer was not challenging the merits of the underlying tax assessment.  539 F.2d at 940.  Here, however, while Plaintiff argues that it is merely challenging TTB's failure to provide required due process and requesting that its permits be restored, such a claim cannot be separated logically from a challenge to the tax liability that arose from the permits being terminated, because the effect is the same:  Plaintiff will not owe the $7.8 million in excise taxes and tax penalties.  The other case upon which Plaintiff relies, *Ammex*, did not even involve a party with tax liability, but instead simply dealt with an APA challenge to an agency's withdrawal of permission to sell duty-free gasoline and diesel fuel—it did not consider the applicability of the Anti-Injunction Act at all.  419 F.3d 1342.  There is thus no basis for the court to conclude that the AIA does not apply simply because Plaintiff challenges the termination of its permits rather than explicitly challenging the imposition of the excise taxes and fines.

Plaintiff's second argument is equally unpersuasive.  Under *South Carolina v. Regan*, 465 U.S. 367 (1984), the Anti-Injunction Act "does not apply at all where the plaintiff has no other remedy for its alleged injury."  *Maze v. IRS*, --- F. Supp. 3d ----, 2016 WL 4007075, at *13 (D.D.C. July 25, 2016) (quoting *Z Street v. Koskinen*, 791 F.3d 24, 31 (D.C. Cir. 2015)).  In *Regan*, South Carolina had no remedy to challenge a federal law taxing the interest on its state-issued bearer bonds, despite the state's claim that the tax was unconstitutional under the 10th Amendment, because the state was not paying the tax and therefore could not bring a refund suit.  Because the state would have to rely on the bond purchasers to make South Carolina's constitutional arguments in individual refund suits, which was unlikely, the Supreme Court held that the AIA does not apply when the normal refund suit process is not a remedy available to the plaintiff.

Here, Plaintiff is not without a remedy.  Under 26 U.S.C. § 7422, Plaintiff may pay the taxes, tax penalties, and interest owed for any taxable period—e.g., $138,907.69 for March 2016, the smallest amount owed in an individual period—and follow the procedures to seek a refund, as outlined in the May 2016 Inquiry Letter.  (Compl. Ex. 10 at 3–4).  This would require Plaintiff to "appeal [its] case to the office of the Director, National Revenue Center within 45 days of the date of th[e] letter," after which the Director "will arrange for a conference."  (*Id.*).  The letter continues that if TTB has "not acted on your claim within 6 months from the date you filed it, you can then file suit for refund."  (*Id.*); *see also* 26 U.S.C. § 7422(a) (requiring party to file an administrative refund claim before bringing suit).  At oral argument, Plaintiff's counsel conceded that it may be able to seek a tax refund, though he noted that a refund would still not restore its tobacco permit.  The fact remains however, that after a successful refund suit, Plaintiff would be free, as it has been since receiving the initial April 2016 letter from TTB, to apply for a new permit, and if that application is denied, to appeal that decision.

Plaintiff's remaining arguments are similarly unavailing.  First, it argues that this suit does not restrain TTB's assessment of taxes because it has posted a $200,000 bond.  This argument ignores the fact that Plaintiff's tax liability is approximately $7.8 million, and therefore TTB would still be prevented from assessing or collecting the remaining $7.6 million it is owed.  Next, Plaintiff argues that it has no tax liability at all if it lacked an export warehouse permit, though 26 U.S.C. § 5703(a)(2) ("Transfer of liability") expressly states that tax liability is transferred to export warehouses upon receiving untaxed tobacco products from manufacturers.  Third, Plaintiff states that because TTB has not formally assessed taxes, an injunction here would not restrain the assessment or collection of owed taxes.  However, as Defendants' counsel further clarified at oral argument, liability for the excise taxes is triggered upon the transfer of the

tobacco products, 26 U.S.C. §§ 5701, 5703, not upon formal assessment, so TTB's position is that Plaintiff currently owes $7.8 million and, if Plaintiff fails to make payments on that liability, TTB will seek to assess and collect the money owed.  Therefore, because the AIA bars "almost all premature interference," with TTB's assessment or collection of excise taxes, *RYO Machine*, 696 F.3d at 471, formal assessment is not a necessary prerequisite to a finding that the AIA bars suit.

Finally, Plaintiff argues that its suit is permitted under the judicially-created exception to the AIA set forth in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962), which allows courts to sidestep the AIA if a plaintiff is clearly correct on the merits.  Under this exception, it must be "clear that under no circumstances could the Government ultimately prevail." *Id.* at 7.  The Supreme Court later clarified that "[o]nly if it is . . . apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained." *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 13–14 (2008).  Because, as explained further below, the merits of this case are not so one-sided as to conclude at this stage that TTB "cannot" prevail, this exception cannot apply.

The court therefore concludes that an injunction restoring Plaintiff's tobacco permit would restrain TTB from assessing and collecting the excise taxes, penalties, and interest Plaintiff currently owes, and therefore Plaintiff's claim is barred by the Anti-Injunction Act.

### 2. Plaintiff's Alcohol Permits and 27 U.S.C. § 204(h)

With respect to Plaintiff's alcohol permits, Defendants make two arguments why the court lacks subject matter jurisdiction.  First, Defendants note that neither 27 U.S.C. § 204 nor the APA § 508 provide a basis for reviewing a permit that terminated automatically under the terms of the statute.  Instead, these statutes provide for judicial review of agency revocation of a

permit, which Plaintiff asserts occurred when TTB sent its April 2016 letter.

As discussed above, under 27 U.S.C. § 204(g), the alcohol permits automatically terminate if actual or legal control of the permittee is transferred in a stock transfer. Therefore, Defendants' position is that Plaintiff's permits automatically terminated after Barbara Geller's stock ownership increased from forty-five percent to ninety percent, and the primary control of the company shifted from Salem Geller to General Manager Jay Goldstein. Upon such an automatic termination, Plaintiff's only remedy would have been to seek a new permit within thirty days of the termination, which would have allowed "the outstanding basic permit[s] [to] continue in effect until such application is finally acted on by the Secretary of the Treasury." *Id.*

In response to Plaintiff's assertion that no such automatic termination occurred, Defendants' second argument is that if, as Plaintiff contends, there was agency action leading to a revocation of the permits on April 14, 2016 (*see* Compl. ¶ 11), then the statute explicitly grants exclusive jurisdiction to U.S. Courts of Appeals to review that revocation. The statute, 27 U.S.C. § 204(h), provides that a party's appeal of TTB's application denial or permit revocation "shall be taken by filing, in the court of appeals of the United States within any circuit wherein such person resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia, within sixty days after the entry of such order, a written petition praying that the order of the Secretary be modified or set aside in whole or in part. . . . Upon the filing of such petition such court shall have exclusive jurisdiction to affirm, modify, or set aside such order, in whole or in part." Therefore, even if this court were to agree that the April 14 letter constituted a revocation, then Plaintiff was required to bring its appeal, including arguments about TTB's failure to provide required due process, to the U.S. Court of Appeals within 60 days, or by June 13, 2016. Plaintiff filed this suit in the district court on July 15, 2016,

11

making it both untimely and in the wrong court.

In support of its position that this court lacks jurisdiction to review the automatic termination, Defendants cite *United Distillers Prods. Corp. v. Henneberry*, 135 F. Supp. 37 (D. Mass. 1955), in which the district court held that it lacked subject matter jurisdiction over an APA claim brought by a permittee whose alcohol permits were automatically terminated following a change in control of the company. The district court held that it lacked subject matter jurisdiction because there was an automatic termination, and even if there had been a revocation, jurisdiction lay with the Court of Appeals. Upon refiling of the permit application, which was then denied, the plaintiff appealed to the D.C. Circuit, which held that the subsequent application denial was proper. 243 F.2d 667 (D.C. Cir. 1957).

This court concludes that it lacks subject matter jurisdiction whether Plaintiff's permits automatically terminated or were revoked. Plaintiff's remedy for its loss of permits is to file a new application with TTB and, if it is denied, to follow the statutory requirements of 27 U.S.C. § 204(h) by filing an appeal within sixty days in a U.S. Court of Appeals.

Because the court lacks subject matter jurisdiction to hear Plaintiff's APA claim on its tobacco permit and alcohol permits, Defendants' motion to dismiss is granted.

### B. Preliminary Injunction

Even if the court found that it had jurisdiction to hear Plaintiff's claim, its motion for a preliminary injunction would still be denied for failure to establish a likelihood of success on the merits. In order to be entitled to a permanent injunction, the plaintiff must establish: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

Plaintiff has not demonstrated that it is likely to succeed on the merits.  There appear to be two primary merits questions:  first, whether TTB is correct that Plaintiff's permits automatically terminated by operation of law upon the transfer of ownership shares, and second, whether TTB failed to follow necessary procedures under its own regulations and the APA.

As to the automatic termination of its tobacco and alcohol permits, Plaintiff argues that, based on Texas community property law and federal tax law governing S Corporations, Defendant incorrectly determined that there was a change in actual or legal ownership of Gulf Coast following Salem Geller's death.  However, Defendants' position—that the permits terminated because Barbara Geller's forty-five percent minority ownership of Gulf Coast increased to ninety percent ownership following her husband's death, and actual control of the company shifted from Salem Geller to Jay Goldstein—appears to be a wholly reasonable interpretation of the relevant statutes and TTB regulations.  Based on what has been proffered at this stage of the litigation, it is quite likely that the court would therefore conclude that the permits automatically terminated and were not revoked.

The second question is whether TTB followed the necessary procedures under APA § 558(c).  As explained above, the court would likely conclude that the permits automatically terminated.  As a result, Plaintiff would have been required to submit a new permit application within thirty days of the event triggering the termination.  After an automatic termination, the only provision of § 558(c) applicable to Plaintiff's permits is the final sentence, which states in full:  "When the licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency."  In other words, TTB's only obligation under the APA after Plaintiff's permits terminated would have

been to allow Plaintiff to continue using its old permits while TTB considered Plaintiff's application for a new permit. However, Plaintiff did not file, and still has not filed, an application for new permits. The court could therefore conclude that TTB had no obligation under the APA to provide Plaintiff with notice and an opportunity to demonstrate or achieve compliance, as that requirement is triggered only by a permit revocation.

As for the remaining factors to be considered in a motion for preliminary injunction, the court finds that Plaintiff sufficiently alleges an imminent and irreparable injury in the irrecoverable loss of money, contracts, and clients that a future restoration of its permits could not redress. Moreover, Plaintiff and Defendants both have substantial interests in compliance with the statutory and regulatory scheme governing these permits and the proper determination of tax liability. The public interest is served both by ensuring that government agencies conform to the requirements of the APA and their own regulations, as well as by maintaining a well-regulated permitting system and collecting owed taxes. Therefore, these factors neither weigh in favor nor weigh against a preliminary injunction. Because Plaintiff is unlikely to succeed on the merits, the motion for preliminary injunction will be denied.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's motion for a preliminary injunction is DENIED.

Date:  October 25, 2016

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge